IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES *EX REL* MARCUS FEASTER,

and

MARCUS FEASTER, Individually

   *Plaintiffs,*

 vs.

DOPPS CHIROPRACTIC CLINIC, LLC

and

JOHN DOPPS,

   *Defendants.*

Case No. 13-1453-EFM-KGG

**MEMORANDUM AND ORDER**

 Once before, this Court considered whether Plaintiff Marcus Feaster plausibly and, where necessary, particularly pleaded claims for relief against Defendants—his alleged former employers, Dopps Chiropractic Clinic, LLC ("the Clinic") and John Dopps.  The Court dismissed certain of Feaster's claims, approved certain of Feaster's claims, and with respect to Feaster's other remaining claims, identified potentially curable defects.  To address those defects, the Court offered Feaster leave to amend his complaint.  The Court now reconsiders whether, consistent with Rules 9(b) and 12(b)(6), Feaster's amended complaint adequately

pleads claims for relief. As before, and for the reasons discussed below, the Court grants in part and denies in part Defendants' motion to dismiss.

## I.     Factual Allegations

The facts of this case remain largely unchanged since the Court last considered the adequacy of Feaster's complaint. To avoid unnecessary repetition, the Courts adopts and incorporates the factual recitation contained in its November 5, 2015 Order.[1] For further efficiency, the Court will discuss as necessary Feaster's amended allegations in its analysis.

## II.     Legal Standard

Defendants move to dismiss Feaster's second amended complaint primarily under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) dismissal depends on "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[2] The Court must accept as true all factual allegations in the complaint but need not accept legal conclusions.[3] Viewing the complaint in this manner, the Court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[4] A claim is facially plausible—i.e. beyond speculative—if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct.[5] The plausibility standard reflects the Rule 8 requirement that pleadings provide defendants with fair notice of the

---

[1] *United States ex rel. Feaster v. Dopps Chiropractic Clinic, LLC*, 2015 WL 6801829 (D. Kan. Nov. 5, 2015).

[2] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] *Iqbal*, 556 U.S. at 678–79.

[4] *See id.* at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citing *Twombly*, 550 U.S. at 556)).

[5] *Id.*

nature of claims as well as the grounds on which each claim rests.[6]  If the complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent, then plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[7]

### III.   Analysis

Defendants move to dismiss each claim alleged in Feaster's second amended complaint. Feaster's second amended complaint contains three counts.  In Count I, Feaster alleges—with new details—that Defendants used fraudulent billing schemes to earn unjustified Medicare reimbursements in violation of the False Claims Act ("FCA").  In Count II, Feaster (re)alleges a claim that the Court dismissed in its November 5, 2015 Order—that Defendants created a work environment demeaning to minority race, religion, ethnicity, and gender groups in violation of § 1981, Title VII, and the Kansas Act Against Discrimination ("KAAD").  In Count III, Feaster alleges that he opposed Defendants' fraud and discrimination and, consequently, Defendants retaliated against him in violation of the FCA, § 1981, Title VII, and KAAD.  The Court discusses the viability of these claims below.

**A.  Count I —False Claims Act**

The FCA "covers all fraudulent attempts to cause the government to pay out sums of money."[8]  The FCA also authorizes private individuals to sue on behalf of the government.[9]

---

[6] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[7] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[8] *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008) (quotations omitted).

[9] 31 U.S.C. § 3730(b).

Feaster's second amended complaint refers to four schemes of allegedly fraudulent conduct that violate two subsections of the FCA. Those two subsections create liability for any person who

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.[10]

Defendants seek dismissal of Feaster's FCA count under Rules 12(b)(6) and 9(b).

**1. Rule 12(b)(6)**

Initially, Defendants argue that Feaster fails plausibly to plead that the Clinic violated the above FCA provisions. In so arguing, Defendants differentiate allegations that attribute actions only to Dopps from allegations that attribute actions specifically to the Clinic. Only Feaster's Clinic-specific allegations, Defendants suggest, implicate the Clinic's possible FCA liability. And to Defendants, Feaster pleads Clinic-specific allegations too sparse and conclusory for the Court to find plausible that the Clinic (caused to be) presented to the government, made, or used: false claims for payment; false, material records; or false, material statements.

Defendants' arguments ignore an alternative basis for liability. Other circuits hold an employer vicariously liable for an employee's FCA violations.[11] No such pronouncement appears explicitly in Tenth Circuit case law. Yet, Tenth Circuit plaintiffs have stated viable FCA

---

[10] 31 U.S.C. § 3729(a)(1)(A)–(B). Feaster claims violations of § 3729(a) and (b)—the statutory organization that existed prior to a May 2009 amendment. The May 2009 amendment reordered § 3729. Subsection (a)(1) became (a)(1)(A). Subsection (a)(2) became (a)(1)(B). Feaster alleges violations of the FCA that occurred after the 2009 amendment. Accordingly, the Court uses the post-amendment version of § 3729.

[11] *See United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 326–27 (5th Cir. 2016) (finding plausible allegations that defendant-school board vicariously violated FCA through employee's conduct); *United States ex rel. Jones v. Brigham & Women's Hosp.*, 678 F.3d 72, 82 (1st Cir. 2012) (noting that defendant-company "may be vicariously liable under the FCA for the misrepresentations of their employees."); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 192 (5th Cir. 2009) (considering vicarious liability allegations essential to relator's FCA claim against defendant-hospital); *Grand Union Co. v. United States*, 696 F.2d 888, 891 (11th Cir. 1983) (imputing employee's actions to defendant-corporation for purposes of FCA liability).

claims against corporate entities by alleging that those entities' employees undertook FCA-prohibited actions.[12]  Feaster alleges that Dopps "owned and operated" the Clinic.  Feaster further alleges that Dopps performed FCA-violating acts "in the course and scope of his actual and apparent agency with [the Clinic]."  His responsive brief also indicates his intention to hold the Clinic liable on the basis of Dopp's agency relationship to the Clinic.  Thus, whether or not Feaster's Clinic-specific allegations independently suggest that the Clinic violated the FCA, the second amended complaint as a whole plausibly states a claim against the Clinic.

**2. Rule 9(b)**

Defendants next argue that Feaster fails particularly to plead that Defendants engaged in FCA-prohibited fraud.  FCA violations involve "circumstances constituting fraud or mistake" that must be pled with particularity under Rule 9(b).[13]  Generally, "Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud."[14]  This means that a plaintiff's allegations must identify the time, place, content, and consequences of the fraudulent conduct.[15]  Consistent with pleading these details, a FCA relator "need only show the

---

[12] *See United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163 (10th Cir. 2010) (approving relator's claim against former corporate employer, in part, because relator specifically alleged "the names and positions of [corporate employer's] employees" who observed, supervised, and otherwise participated in FCA violations); *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702 (10th Cir. 2006) (finding that plaintiff plausibly alleged that defendant-corporation caused false claims to be submitted to the government).
   Likewise, Tenth Circuit case law abounds with corporation-directed FCA suits that proceed on the merits against the corporation based on allegations involving the actions of the corporation's employees. *See United States ex rel. Lacy v. New Horizons, Inc.*, 348 F. App'x 421 (10th Cir. 2009); *Conner*, 543 F.3d 1211; *United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.*, 232 F.3d 902 (10th Cir. 2000).

[13] Fed. R. Civ. P. 9(b); *see also Sikkenga*, 472 F.3d at 727.

[14] *Sikkenga*, 472 F.3d at 727 (quotation omitted).

[15] *Lemmon*, 614 F.3d at 1171.

specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme."[16]

According to Defendants, Feaster's second amended complaint contains the same Rule 9(b) defects that originally prevented the Court from approving his Count I-FCA claim. Originally, Feaster categorically alleged that Defendants defrauded the government by billing Medicare for unperformed, uncovered, unnecessary, or undocumented treatment. In its November 5, 2015 Order, the Court characterized Feaster's first amended complaint as lacking details that link the four possible fraudulent billing schemes to particular false claims for payment. While no checklist of mandatory details exists, the Court noted that the Tenth Circuit approves

> details concerning the dates of the claims, the content of the forms or the bills submitted, their identification numbers, the amount of money charged to the government, the particular goods and services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices [as representative of] the types of information that may help a relator to state his or her claims with particularity.[17]

Feaster's first amended complaint alleged almost none of those details.

Feaster's second amended complaint contains new allegations. Feaster adds a handful of those new allegations to his respective descriptions of the four fraudulent schemes.[18] He presents the mass of his new allegations, however, in seven pages worth of material organized into two new subsections—one titled "Illustrative Examples of Fraudulent Practices" and the

---

[16] *Id.* at 1172.

[17] *Sikkenga*, 472 F.3d at 727–28 (quotation omitted).

[18] "Allegations" Subsections A through D, for example, each contain at least one new allegation, including paragraphs 100, 108, 112, 120, and 121.

other titled "Billing Procedures."  Read with the second amended complaint's other allegations, these subsections identify by initials nine individuals for whom Defendants allegedly submitted fraudulent claims for payment to the government.[19]  The allegations respectively associate each individual with one or more of the alleged schemes to bill Medicare for unperformed, uncovered, unnecessary, or undocumented treatment.  For most of these individuals, Feaster estimates—in relation to his own 17-month employment—when and how frequent treatments occurred.  For all of these individuals, Feaster describes the conditions for which these individuals sought or needed treatment.  He also describes the services that they actually received.  And he identifies the services for which Dopps billed Medicare.  He further explains how Dopps allegedly acted to alter medical records and billing information to earn unjustified Medicare reimbursements.[20]

Consider patient B.B., for example.  According to Feaster's allegations, B.B. is Medicare enrolled, wheelchair bound, diagnosed with multiple sclerosis, and a "personal friend" of Dopps.  Dopps treated B.B. multiple times per week throughout Feaster's employment.  B.B. sought and actually received from Dopps only "maintenance therapy," treatment uncovered by Medicare.[21]  Specifically, B.B. presented for palsy-related complaints affecting her arm.  Dopps treated B.B.'s arm, but billed for unperformed—yet Medicare-covered—"active therapy" to B.B.'s spine.[22]

---

[19] Feaster refers to J.D., S.L., B.B., M.R., A.S., R.L., A.H., A.B., and G.R.  Feaster also references an "elderly Caucasian woman who reported seeing Dr. Dopps for forty years" and "a Medicare eligible Caucasian male [who] sought relief for localized low back pain following activity."

[20] In some instances, for example, Dopps allegedly directed that Medicare be billed with the "AT" code for Medicare-approved "active therapy," despite providing only uncovered maintenance therapy or no treatment at all.  In other instances, Dopps allegedly recorded false diagnosis codes and treatment notes in the patients' files to substantiate the medical necessity of services for which he sought and received Medicare reimbursement.

[21] "Maintenance therapy" includes X-rays or other diagnostic or therapeutic services furnished or ordered by a chiropractor.

[22] "Active therapy" involves manual manipulation of the spine to correct a subluxation that has resulted in a neuro-musculoskeletal condition for which manual manipulation constitutes appropriate treatment.

Other times, Dopps provided and billed for unnecessary "active therapy" treatment to B.B.'s spine. Dopps allegedly directed Feaster to falsify B.B.'s patient file to include the "active therapy" billable treatment code and to fabricate exam notes to justify those codes. Dopps then directed an individual identified as A.D. to bill Medicare according to the file. A.D. billed Medicare as instructed by Dopps. Feaster—who reviewed rejected requests for reimbursement—is unaware that the government rejected any of the fraudulent reimbursement requests.

These added allegations sufficiently link the alleged Medicare-fraud schemes to particular claims for payment. Some combination of details regarding the date, amount, timing, goods or services, and people involved in the alleged fraud is necessary to satisfy Rule 9(b)'s particularity requirement.[23] Admittedly, the second amended complaint lacks information regarding the exact amounts or dates of submitted claims for payment. Yet Feaster alleges precise enough details regarding the date, timing, underlying services, and individuals involved to create "an adequate basis for a reasonable inference that false claims were submitted."[24] Significantly, identifying specific patients helps fasten the alleged fraudulent scheme to specific payment requests.[25] Allegations respecting each individual's treatment—its estimated date and frequency; the services sought, provided, and billed for; the content of related medical and

---

[23] *Sikkenga*, 472 F.3d at 727–28 (quotation omitted).

[24] *Lemmon*, 614 F.3d at 1172.

[25] *See Lacy*, 348 F. App'x 421 (considering allegations of Medicare fraud defective, in part, because relator alleged an overbroad "class of patients" that included "every patient in [defendant's] nine operating homes" but alleged no particular "representative of the class described."); *United States ex. rel. Fowler v. Evercare Hospice, Inc.*, 2015 WL 5568614, at *9 (D. Colo. Sept. 21, 2015) (finding that "the six patients highlighted in the complaint provide an adequate basis for a reasonable inference that false claims were submitted as part of that [fraudulent] scheme." (quotation omitted)); *United States ex rel. Sharp v. Eastern Oklahoma Orthopedic Center*, 2009 WL 499375 (N.D. Okla. Feb. 27, 2009) (approving allegations that specifically identify patients; disapproving allegations that "are not tied to any particular patient").

billing records—make precise enough the who, what, when, where, and how of the alleged fraud plausibly to circumscribe Feaster's allegations to specific payment requests. Mindful of these allegations and that Rule 9(b) ultimately operates "to ensure that the complaint provides the minimum degree of detail necessary to begin a competent defense," the Court concludes that Feaster pleads his Count I-FCA claim with particularity.[26]

Because Feaster plausibly and particularly states a claim for relief under FCA § 3729(a)(1)(A)–(B), the Court denies Defendants' motion to dismiss Count I.

## B. Count II—Hostile Work Environment

Previously, the Court dismissed Feaster's hostile work environment claims. Nonetheless, Feaster included the same claims in his second amended complaint. In response to Defendants' arguments to dismiss these claims, Feaster denies "that those dismissed claims remain viable" and part of the Court's proceedings.[27] Feaster confesses that he "does not intend for the trial court to re-evaluate those claims now." The Court likewise intends not to reevaluate Feaster's already dismissed claims. Accordingly, the Court grants Defendants' motion and affirms its previous order dismissing Feaster's hostile work environment claims.

## C. Count III—Retaliation[28]

Mostly as before, Feaster's final count alleges that Defendants unlawfully retaliated against him as retribution for opposing Defendants' fraud and discrimination—all in violation of

---

[26] *Fulgham v. Embarq Corp.*, 785 F.3d 395, 416 (10th Cir. 2015) (quotation omitted).

[27] Instead, Feaster explains that he "included those allegations . . . only to preserve those dismissed points for appellate review."

[28] The Court notes that Feaster titles Count III as a "Constructive or Actual Wrongful Termination and Post Termination Retaliation" claim, but his allegations (and the parties' briefing) regard retaliatory discharge and post-employment retaliation. Accordingly, the Court will consider, as necessary, whether Feaster's second amended complaint states a plausible retaliation claim under the FCA, § 1981, Title VII, and KAAD.

the FCA, § 1981, Title VII, and KAAD.[29]  As retaliation, Defendants allegedly interfered with Feaster's current and prospective employment.  According to Feaster, Defendants modified his salary terms so unfavorably that they forced him to quit the Clinic; then Defendants allegedly made false statements to Feaster's prospective employers that defeated his efforts to obtain other employment.  Only Feaster's second amended complaint directly alleges prospective employment retaliation.  Defendants now argue that Feaster inadequately states his retaliation claims, for the more specific reasons discussed below.

**1. New Allegations**

Initially, Defendants argue that Feaster improperly amended his complaint to add a previously unstated "post-termination retaliation" claim.  In its November 5, 2015 Order, the Court determined that Feaster's first amended complaint lacked allegations that Defendants employed enough workers to qualify as an "employer" subject to liability under Title VII and KAAD.  The Court did not dismiss Feaster's Title VII and KAAD claims for this technical defect.  "Accepting that Feaster [could] cure this technical defect," the Court instead "grant[ed] Feaster leave to amend his pleadings."  The Court gave Feaster "14 days from the date of [its] Order to file a second amended complaint."  Feaster amended his pleadings.  Some of his new allegations concern the number of workers employed by Defendants and affiliated entities. Other new allegations describe actions that Feaster characterizes as post-termination retaliation. Defendants consider those retaliation allegations "procedurally improper."  The Court offered Feaster leave to amend for the limited purpose of addressing his Title VII and KAAD claims'

---

[29] Feaster's first amended complaint contained a claim for retaliation under Kansas common law.  The Court dismissed that claim in its November 5, 2015 Order.  Feaster's second amended complaint still includes retaliation allegations that relate to Kansas common law.  But Feaster no longer requests relief under that theory. Accordingly, the Court construes the second amended complaint to exclude that theory.

technical defects, or so Defendants argue. Defendants now fault Feaster for adding "a new claim" without specifically seeking leave for that purpose.

Defendants' interpretation of the Court's November 5, 2015 Order is colorable, but it is not convincing. Courts should enforce the rules surrounding amendment decisions "to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."[30] Accordingly, courts generally allow amendments to pleading "when justice so requires" and "where there is no prejudice."[31] The Court permitted Feaster to amend his Title VII and KAAD claims "because [it could not] say with absolute certainty that amendment would be futile." To Defendants' point, the Court offered amendment after identifying a specific pleading defect. But the Court gave no instructions limiting the scope of amendment to address that, or any, specific purpose. Moreover, Defendants proffer no authority or consequential prejudice to convince the Court to exclude Feaster's new retaliation allegations. The Court does not understand those post-termination allegations unfairly to alter Feaster's retaliation claims. As such, the Court approves Feaster's incorporation of the new allegations.

**2. The Clinic**

Defendants next argue that Feaster fails plausibly to plead that the Clinic is liable for retaliation. By Defendants' standards, Feaster pleads allegations too inconsistent and untrue to establish that the Clinic employed Feaster. But Defendants reference no *legal* standards, let alone provide any legal authority, to support their judgments. It's all well and good for

---

[30] *Predator Intern., Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1186 (10th Cir. 2015) (quotation omitted).

[31] *Id.* (quotations omitted).

Defendants to characterize Feasters' allegations as inconsistent and untrue, but it is the Court's obligation to base its characterizations in the law.

Turning to the law, the Court finds no basis to conclude, like Defendants, that Feaster pleads "beyond implausible" retaliation claims against the Clinic. To begin, the Court reminds Defendants that it must accept as true the second amended complaint's allegations.[32] Thus, Defendants earn no 12(b)(6) relief by arguing that "an entity that has never been named as a defendant in this lawsuit[,] John Dopps Chiropractor, P.A.," actually employed Feaster. Also important, only Title VII and KAAD condition recovery on proof that defendant statutorily qualifies as an "employer."[33] The FCA and § 1981 each authorize retaliation recovery against wrongdoers possessing employer-like control over the affected plaintiff.[34] Feaster alleges that "Defendants employed [him]" and "expected [him] to assist and obey each of the members of [the Clinic]." These and similar allegations allow "the Court to reasonably infer that [the Clinic] is liable for the alleged [retaliation]."[35]

What remains of Defendants' argument is the proposition that Feaster's Title VII and KAAD-directed "integrated employer" allegations lack plausibility. Title VII and KAAD limit

---

[32] *Iqbal*, 556 U.S. at 678–79.

[33] *See* 42 U.S.C. § 2000e(b) (defining "employer" under Title VII as one with 15 or more employees); K.S.A. § 44-1002(b) (defining "employer" under KAAD as one with 4 or more employees).

[34] The FCA's retaliation provision protects "[a]ny employee, contractor, or agent." 31 U.S.C. 3730(h)(1). This language replaced the term "employee" to broaden "protection to persons in employment-like relationships that were not technically 'employees.' " *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014) (citations omitted). Similarly, § 1981 authorizes recovery from wrongdoers other than plaintiff's technical employer. *See Flores v. City and Cty. of Denver*, 30 F. App'x 816, 819 (10th Cir. 2002) (emphasizing that § 1981 liability requires "an underlying employment contract" and that "the individual defendant was personally involved in the discriminatory conduct" affecting plaintiff's employment contract).

[35] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

liability to employers who employ a sufficient minimum number of workers.[36] Courts sometimes "may treat separate entities as a . . . single"—or integrated—"employer for purposes of determining the threshold number of employees required for an employer to be subject to suit under Title VII."[37] Feaster attempts to satisfy Title VII and KAAD's threshold minimum-employee requirements by alleging facts showing that the "Defendants should be found to be an 'integrated employer' with the affiliated [Dopps Chiropractic] entities." Four, fact-intensive factors determine whether enough unity exists between two entities to deem them a single employer: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control.[38] Roughly three pages of the second amended complaint's new allegations relate to these factors. Reasonable inferences in Feasters' favor, the allegations collectively show that, with affiliated entities operating under the "Dopps Chiropractic" name, the Clinic shared and commonly managed: support staff, patients, business opportunities, facilities at 5119 E. Kellogg Drive, certain trade show equipment, marketing materials, and a website. The allegations also support the inference that, with the affiliated entities, the Clinic employed the minimum number of employees required by Title VII and KAAD. Those allegations allow the Court reasonably to infer that the Clinic and affiliated "Dopps Chiropractic" entities acted with enough unity that the Clinic may be liable under Title VII and KAAD as an "employer." And Defendants authority-less arguments do not convince the Court otherwise.

---

[36] *See* 42 U.S.C. § 2000e(b) (defining "employer" under Title VII as one with 15 or more employees); K.S.A. § 44-1002(b) (defining "employer" under KAAD as one with 4 or more employees).

[37] *Avington v. Metro. Tulsa Urban League*, 603 F. App'x 662, 663 (10th Cir. 2015). Title VII's employer-employee relationship tests apply to claims under KAAD. *Nixon v. Nw. Mut. Life Ins. Co.*, 58 F. Supp. 2d 1269, 1274 n.2 (D. Kan. 1999).

[38] *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1227 (10th Cir. 2014).

**3. Dopps**

Defendants also argue that Feaster fails to plead that Dopps employed enough workers to implicate Title VII and KAAD.  Title VII requires "fifteen or more employees" to implicate "employer" liability.[39]  KAAD conditions "employer" liability on the employment of "four or more persons."[40]  According to Defendants, "[t]here is no allegation that John Dopps had four or more employees."  Defendants therefore insist that the second amended complaint contains no allegations that would subject Dopps to "employer" liability under Title VII or KAAD.

Defendants overlook, however, that both Title VII and KAAD extend "employer" liability on an agency basis.[41]  Title VII defines "employer" to include "a person engaged in an industry affecting commerce who has fifteen or more employees . . . , *and any agent of such a person*."[42]  KAAD defines "employer" to include "any person in [Kansas] employing four or more persons *and any person acting directly or indirectly for an employer*."[43]  As discussed above, Feaster adequately alleges that the Clinic may be liable under Title VII and KAAD as an "employer."  Also as discussed above, Feaster sufficiently alleges an agency relationship between Dopps and the Clinic.  Dopps "owned and operated" the Clinic.  And "[a]t all times relevant, Dopps acted in the course and scope of his actual and apparent agency with [the Clinic]."  Given these allegations, the second amended complaint contains allegations that would subject Dopps to "employer" liability under Title VII and KAAD.

---

[39] 42 U.S.C. § 2000e(b).

[40] K.S.A. § 44-1002(b).

[41] At least with respect to KAAD, Defendants also overlook that Feaster directly alleges that "Defendants employed more than four employees throughout Dr. Feaster's employment."

[42] 42 U.S.C. § 2000e(b) (emphasis added).

[43] K.S.A. § 44-1002(b) (emphasis added).

**4. FCA Whistleblower and § 1981 Retaliation**

Defendants make one final argument, aimed at dismissal of Feaster's FCA and § 1981 retaliation claims. The Court already approved those claims in its November 5, 2015 Order. Apart from adding the post-termination retaliation details mentioned above, Feaster has altered nothing about his FCA and § 1981 retaliation claims. And nothing in Defendants' one-page arguments justifies reconsidering Feasters' previously approved claims.

Defendants dedicate only one sentence to refuting Feaster's FCA retaliation claim: "Given the additional implausible allegations concerning the purported FCA claims, and the identity of his employer, the remaining employment claim against John Dopps fails to state a claim for relief and should be dismissed." That sentence is too generic and unsupported to earn a reasoned response more specific than this: For the reasons stated in this Order and the Court's November 5, 2015 Order, the Court disagrees.

Against Feaster's § 1981 retaliation claim, Defendants argue that "Feaster has not alleged a single instance of discrimination against an individual of a protected class and therefore has not stated a plausible claim for relief." As supporting authority, Defendants' cite *CBOCS West, Inc. v. Humphries*.[44] Unlike Defendants, the Court does not read *Humphries* to exclude Feasters' retaliation claim. *Humphries* broadly held that "§ 1981 encompasses claims for retaliation," without limiting such claims only to plaintiffs who encountered retribution for protecting specific minorities' § 1981 rights. And given (1) the analytical parity between Title VII and § 1981[45] and

---

[44] 553 U.S. 442 (2008).

[45] *See id.* ("we have previously acknowledged a 'necessary overlap' between Title VII and § 1981 (quotation omitted)); *Thomas v. Berry Plastics Corp.*, 803 F.3d 514 n.4 (10th Cir. 2015) ("Because the showing required to establish retaliation is identical under § 1981 and Title VII, we do not distinguish between these bases for recovery here." (quotation omitted))

(2) that a plaintiff may prove Title VII-prohibited retaliation without proving that the underlying conduct s/he opposed actually violated Title VII,[46] the Court is unwilling to read *Humphries* to require more of Feaster's § 1981 claim than his Title VII claim. Accordingly, Defendants fail to convince the Court that *Humphries* obligated Feaster to have plead specifically that the underlying discrimination he opposed "involved an individual of a protected class."

Because the second amended complaint plausibly pleads retaliation claims under the FCA, § 1981, Title VII, and KAAD, the Court denies Defendants' motion to dismiss Count III.

## D. Summary

Once before, this Court considered whether Feaster plausibly and, where necessary, particularly pleaded claims for relief against Defendants. After reconsidering those issues under Rules 9(b) and 12(b)(6), the Court approves Feaster's Count I-FCA claim and his Count III-FCA, § 1981, Title VII, and KAAD retaliation claims. But the Court affirms its previous dismissal of Feaster's Count II hostile work environment claims. Accordingly, the Court grants in part and denies in part Defendants dismissal motion.

---

[46] *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1267 (10th Cir. 2005) ("[Plaintiff] may maintain an action for retaliation even though the conduct forming the basis of her underlying complaint was not adjudged to have violated Title VII.").

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Second Amended Complaint (Doc. 34) is hereby **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**.

Dated this 15th day of July, 2016.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE